Fuchsberg, J.
(dissenting). Brother Fox and John Storar having each passed away, whether, had each one lived, it would have been more appropriate to prolong his *392 life, hasten his death, or neither, is now moot. In this posture, two of my colleagues, incanting the need for judicial restraint, nevertheless have chosen to plunge into what in the end must be recognized for no more than an academic legal debate. In my view, that is a mistake. Far better would it be if we accepted the conclusion nature has wrought and left the cases where they were.
I do not question the power of courts to decide such questions. In open cases, when there is disagreement among those in whom reside the practical and primary responsibility to make such agonizing moral choices, when the disputants reach an impasse, the judiciary, the arm of our society trained to decide controversies between persons or between persons and the State, cannot shirk its obligation. But the cases before us now are already irrevocably concluded.
True, on rare occasions, we entertain causes that are abstract. But, never ones so deeply affected by so many nonlegal disciplines — theology, philosophy, sociology, psychology, biology, to name but a few. For the ultimate and forbidding issues are no less than the right to live or, if you will, the right to die (see, e.g., Veatch, Death, Dying and the Biological Revolution [Yale U Press] ; Downing, Euthanasia and the Right to Die [Peter Own Limited, Lond]; Sefer Chasidism [Frankfurt ed, No. 315-318]; and see, generally, authorities cited in ns 1, 3 of Judge Jones’ dissenting-in-part opn on this appeal).
It also goes without saying that the unavoidably complex interplay of the principles emanating from these competing specialities has grown with abounding medical and technological changes. These have dramatically enlarged the potential for prolonging the process of dying, pain-racked though it may be.
Consequently, it can come as no surprise that decisions on this subject — and today there is no dearth of them (e.g., Matter of Quinlan, 70 NJ 10; Superintendent of Belchertown State School v Saikewicz, 373 Mass 728; Matter of Eichner [Fox], 73 AD2d 431 [Mollen, P. J.]) — all were handed down to meet the demands of ongoing controversies.
*393 In this extraordinarily sensitive area of litigation, each new case is bound to present its own peculiar circumstances. Judicial freedom to react to its factual refinements, if need be quickly and, to a considerable degree, on a largely ad hoc basis, is essential. Given the precedential strictures of stare decisis (see, e.g., Thornton v Roosevelt Hosp., 47 NY2d 780), to lay down law, then, is needlessly to tie our hands against the time when we are confronted by an appeal we have to decide. To reach out to do so prematurely is not to adjudicate, but legislate. Worse, I respectfully suggest, it is unwise to undercut a great strength of the common-law process, the evolution of law step by step as it moves from case to case.
I, therefore would dismiss each case for mootness.
In Matter of Storar: Order reversed, without costs, cross petition denied and petition granted.
Chief Judge Cooke and Judges Jasen, Gabrielli and Meyer concur with Judge Wachtler; Judge Jones dissents in part and votes to modify in an opinion; Judge Meyer votes to reverse, agrees with the reasoning in Part I of opinion by Judge Jones ; Judge Fuchsberg dissents and votes to reverse and remit the matter to Supreme Court, Monroe County, with directions to dismiss the proceeding for mootness in a separate opinion.
In Matter of Eichner: Order modified, without costs,' in accordance with the opinion herein, and, as so modified, affirmed.
Chief Judge Cooke and Judges Jasen, Gabrielli and Meyer concur with Judge Wachtler; Judge Jones concurs in result in an opinion in Part I of which Judge Meyer also concurs; Judge Fuchsberg dissents and votes to reverse and remit the matter to Supreme Court, Nassau County, with directions to dismiss the proceeding for mootness in a separate opinion.